Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL HANSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>ZOGENIX, INC., CAM L. GARNER, LOUIS C. BOCK, JAMES B. BREITMEYER, STEPHEN FARR, CAROLINE M. LOEWY, ERLE T. MAST, MARY E. STUTTS, RENEE TANNENBAUM, DENELLE J. WAYNICK, and MARK WIGGINS,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Daniel Hansen ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against Zogenix, Inc. ("Zogenix" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1

§§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Zogenix by Zinc Merger Sub, Inc., an indirect wholly owned subsidiary of UCB S.A. ("UCB").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Zogenix common stock.

7. Defendant Zogenix is a biopharmaceutical company that develops and commercializes therapies to transform the lives of patients and their families living with rare

2

diseases in the United States. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "ZGNX."

8. Defendant Cam L. Garner ("Garner") is a Co-Founder and Chairman of the Board of the Company.

9. Defendant Louis C. Bock ("Bock") is a director of the Company.

10. Defendant James B. Breitmeyer ("Breitmeyer") is a director of the Company.

11. Defendant Stephen Farr ("Farr") is a Co-Founder, Chief Executive Officer, President, and a director of the Company.

12. Defendant Caroline M. Loewy ("Loewy") is a director of the Company.

13. Defendant Erle T. Mast ("Mast") is a director of the Company.

14. Defendant Mary E. Stutts ("Stutts") is a director of the Company.

15. Defendant Renee Tannenbaum ("Tannenbaum") is a director of the Company.

16. Defendant Denelle J. Waynick ("Waynick") is a director of the Company.

17. Defendant Mark Wiggins ("Wiggins") is a director of the Company.

18. Defendants Garner, Bock, Breitmeyer, Farr, Loewy, Mast, Stutts, Tannenbaum, Waynick, and Wiggins are collectively referred to herein as the "Individual Defendants."

19. Defendants Zogenix and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On January 19, 2022, Zogenix and UCB announced that the companies had entered into a definitive agreement under which UCB would acquire Zogenix. Under the terms of the agreement, UCB will commence a tender offer to purchase all outstanding shares of Zogenix for

a purchase price per share of $26.00 in cash at closing, plus a contingent value right for a potential cash payment of $2.00 upon EU approval by December 31, 2023, of FINTEPLA®. The press release announcing the Proposed Transaction states, in pertinent part:

### UCB to acquire Zogenix

- Transaction broadens and builds upon UCB's role as a leader in, and our continued commitment to, addressing unmet needs of people living with epilepsy, complementing existing medicines and expanding clinical development pipeline of epilepsy and rare disease therapies

- Adds treatment option for specific, vulnerable patient populations with FINTEPLA® (fenfluramine) C-IV oral solution - approved for seizures associated with Dravet syndrome, with potential in other significant seizure disorders including Lennox-Gastaut syndrome

- Total transaction* value of up to approximately US$ 1.9 billion / € 1.7 billion. This consists of US$ 26.00 in cash per Zogenix share plus a milestone-based contingent value right for a potential cash payment of US$ 2.00 per share

NEWS PROVIDED BY
**UCB and Zogenix**
Jan 19, 2022, 01:00 ET

BRUSSELS and EMERYVILLE, Calif., Jan. 19, 2022 /PRNewswire/ -- **Regulated information – Inside information** – UCB (Euronext: UCB) and Zogenix (NASDAQ: ZGNX) announced today that the companies have entered into a definitive agreement under which UCB would acquire Zogenix, Inc., a global biopharmaceutical company commercializing and developing therapies for rare diseases. Under the terms of the agreement, UCB will commence a tender offer to purchase all outstanding shares of Zogenix for a purchase price per share of US$ 26.00 in cash at closing, plus a contingent value right (CVR) for a potential cash payment of US$ 2.00 upon EU approval by December 31, 2023, of FINTEPLA® as an orphan medicine for treatment of Lennox-Gastaut syndrome (LGS). The upfront consideration represents a 72% premium to Zogenix shares based on the 30-day volume weighted average closing stock price of Zogenix prior to signing. The total transaction is valued at up to approximately US$ 1.9 billion / € 1.7 billion.

The board of directors of both companies have unanimously approved the transaction, the closing of which remains subject to the tender of shares representing at least a majority of the total number of Zogenix's outstanding shares, receipt of required antitrust clearances, and other customary conditions.

*   *   *

**Transaction Terms, Approvals and Time to Closing**

Under the terms of the acquisition agreement, UCB, through a wholly-owned subsidiary, Zinc Merger Sub, Inc., will initiate a tender offer to acquire all outstanding shares of Zogenix for a purchase price of US$ 26.00 per share in cash, plus one non-tradeable CVR. The CVR will entitle holders to an additional cash payment of US$ 2.00 per share if a regulatory milestone related to approval of FINTEPLA® for treatment of seizures associated with Lennox-Gastaut syndrome (LGS) is achieved by or before December 31, 2023. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Zogenix's outstanding shares, receipt of required antitrust clearances, and other customary conditions. Upon the successful completion of the tender offer, UCB's acquisition subsidiary will be merged into Zogenix, and any remaining shares of common stock of Zogenix will be cancelled and converted into the right to receive the same consideration per share offered in the tender offer. The transaction is expected to close by the end of the second quarter of 2022. There can be no assurance any payments will be made with respect to the CVR.

**Financing and Guidance**

The acquisition of Zogenix will be financed by a combination of available cash resources and a new term loan. The transaction is not subject to any financing condition. In addition to contributing to UCB's revenue growth after closing, the acquisition of Zogenix is expected to be accretive to UCB's earnings from 2023 onwards.

**Advisors**
Lazard and Barclays are acting as financial advisors to UCB in relation to the transaction. Covington & Burling LLP is acting as legal advisor to UCB on this transaction.

BofA Securities and SVB Leerink are acting as financial advisors to Zogenix on this transaction. Latham & Watkins LLP is acting as legal advisor to Zogenix on this transaction.

*     *     *

**About Zogenix**

Zogenix is a global biopharmaceutical company committed to developing and commercializing therapies with the potential to transform the lives of patients and their families living with rare diseases. The company's first rare disease therapy, FINTEPLA® (fenfluramine) oral solution, has been approved by the U.S. Food and Drug Administration (FDA) and the European Medicines Agency and is under

regulatory review in Japan for the treatment of seizures associated with Dravet syndrome, a rare, severe lifelong epilepsy. The U.S. FDA recently accepted for filing Zogenix's supplemental New Drug Application (sNDA) and granted Priority Review for the use of FINTEPLA for the treatment of seizures associated with an additional rare epilepsy, Lennox-Gastaut syndrome (LGS). Zogenix is also initiating a study of FINTEPLA in a genetic epilepsy called CDKL5 Deficiency Disorder (CDD) and is collaborating with Tevard Biosciences to identify and develop potential next-generation gene therapies for Dravet syndrome and other genetic epilepsies. The company has an additional late-stage development program, MT-1621, in a mitochondrial disease called TK2 deficiency[13].

**About UCB**

UCB, Brussels, Belgium (www.ucb.com) is a global biopharmaceutical company focused on the discovery and development of innovative medicines and solutions to transform the lives of people living with severe diseases of the immune system or of the central nervous system. With more than 8,000 people in approximately 40 countries, the company generated revenue of €5.3 billion in 2020. UCB is listed on Euronext Brussels (symbol: UCB). Follow us on Twitter: @UCB_news.

21. On February 1, 2022, Defendants caused to be filed with the SEC a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") in connection with the Proposed Transaction.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

22. The Solicitation Statement, which recommends that Zogenix shareholders tender their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Zogenix's financial projections; (ii) the financial analyses performed by the Company's financial advisors, BofA Securities, Inc. ("BofA") and SVB Leerink LLC ("SVB"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving Company insiders.

23. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Company Board; (ii) Background and Reasons for the Company Board's Recommendation;

(iii) Certain Unaudited Prospective Financial Information; and (iv) Opinions of the Company's Financial Advisors.

24. The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m., Eastern Time, on March 1, 2022 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Zogenix's Financial Projections**

25. The Solicitation Statement omits material information concerning Zogenix's financial projections.

26. With respect to the Company's financial projections, the Solicitation Statement fails to disclose: (1) all line items underlying the Company's financial projections; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to tender their shares in

connection Proposed Transaction.

28. When a company discloses non-GAAP financial metrics in a Solicitation Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning BofA's and SVB's Analyses**

30. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by BofA and SVB.

31. The valuation methods, underlying assumptions, and key inputs used by BofA and SVB in rendering their purported fairness opinions must be fairly disclosed to the Company's shareholders. The description of BofA's and SVB's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses.

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 7, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

32. Without the information described below, the Company's shareholders are unable to fully understand BofA's and SVB's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**A. BofA's Analyses**

33. With respect to BofA's "*Selected Publicly Traded Companies Analysis*" and "*Selected Precedent Transactions Analysis*," the Solicitation Statement fails to disclose the financial metrics of each company and transaction BofA observed in its analyses, including the date each selected transaction closed, and the value of each transaction.

34. The Solicitation Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) the terminal value for the Company; (2) the individual inputs and assumptions underlying the (i) perpetuity growth rate range of negative 30% to negative 20%, and (ii) discount rates ranging from 9.00% to 12.00%; (3) the Company's NOLs as of December 31, 2021 and the Company's future losses over the period from calendar year 2021 through calendar year 2023; (4) the net cash of the Company as of December 31, 2021; (5) the value of the Convertible Notes as of December 31, 2021; and (6) the number of fully-diluted shares of Zogenix common stock outstanding.

35. The Solicitation Statement fails to disclose the following concerning BofA's "*Present Value of Wall Street Analysts Price Targets*" analysis: (1) the individual price targets observed by BofA in its analysis; and (2) the sources thereof.

36. With respect to BofA's "*Premia Calculations*," the Solicitation Statement fails to disclose each transaction and the individual premiums paid therein.

### B. SVB's Analyses

37. The Solicitation Statement fails to disclose the following concerning SVB's "*Discounted Cash Flow Analysis*": (1) the terminal values for the Company; (2) the individual inputs and assumptions underlying the (i) perpetuity growth rate of negative 20% to negative 30%, and (ii) discount rates of 10.0% to 13.0% and of 12.5%; and (3) the fully diluted shares outstanding of the Company.

38. With respect to SVB's "*Publicly Traded Company Analysis*" and "*Selected Precedent Transaction Analysis*," the Solicitation Statement fails to disclose the financial metrics of each company and transaction SVB observed in its analyses, including the date each selected transaction closed, and the value of each transaction.

39. With respect to SVB's analysis of analysts' price targets for Zogenix common stock, the Solicitation Statement fails to disclose: (1) the individual price targets observed by SVB in its analysis; and (2) the sources thereof.

40. With respect to SVB's analysis of premiums paid in transactions selected by SVB, the Solicitation Statement fails to disclose each transaction and the individual premiums paid therein.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

41. The Solicitation Statement omits material information concerning potential conflicts of interest involving Company insiders.

42. The Solicitation Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

43. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

45. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

47. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

48. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce,

solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

49. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

50. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

51. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

52. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

53. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

55. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

56. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

57. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

58. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

59. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

60. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

61. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

62. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

64. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

65. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains

the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

66. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

67. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 7, 2022       Respectfully submitted,

              **HALPER SADEH LLP**

              By: /s/ Daniel Sadeh
              Daniel Sadeh, Esq.
              Zachary Halper, Esq. (to be admitted *pro hac vice*)
              667 Madison Avenue, 5th Floor
              New York, NY 10065
              Telephone: (212) 763-0060
              Facsimile: (646) 776-2600
              Email: sadeh@halpersadeh.com
                 zhalper@halpersadeh.com

              *Counsel for Plaintiff*